# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROGRESS RAIL SERVICES CORP., and PROGRESS RAIL LOCOMOTIVE INC. *Plaintiffs*, v. WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORP., and WABTEC RAILWAY ELECTRONICS, INC., *Defendants*. | Case No. 1:23-cv-00983-CFC **PUBLIC VERSION** |

## DECLARATION OF ANGELO M. RUSSO IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' LETTER BRIEF REGARDING MOTION FOR SANCTIONS

OF COUNSEL:

Amy B. Manning
Angelo M. Russo
Sarah A. Zielinski
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601

Wrede H. Smith, III
David Finkelson
McGuireWoods LLP
888 16th Street NW, Suite 500
Washington, DC 20006

Joshua D. Wade
McGuire Woods LLP
800 East Canal Street
Richmond, VA 23219

Matthew F. Davis (#4696)
Jesse L. Noa (#5015)
Tyler E. Cragg (#6398)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
mdavis@potteranderson.com
jnoa@potteranderson.com
tcragg@potteranderson.com

*Counsel for Progress Rail Services Corp. and Progress Rail Locomotive Inc.*

Dated: February 10, 2026

Public Version Dated: February 17, 2026

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROGRESS RAIL SERVICES CORP., and PROGRESS RAIL LOCOMOTIVE INC. *Plaintiffs*, v. WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORP., and WABTEC RAILWAY ELECTRONICS, INC., *Defendants*. | Case No. 1:23-cv-00983-CFC **PUBLIC VERSION** |

## DECLARATION OF ANGELO M. RUSSO IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' LETTER BRIEF REGARDING MOTION FOR SANCTIONS

I, Angelo M. Russo, hereby declare as follows:

1. I am an attorney licensed to practice in the State of Illinois. I am a partner in the law firm of McGuireWoods LLP and Of Counsel in this matter on behalf of Plaintiffs, Progress Rail Services Corporation and Progress Rail Locomotive Inc. (collectively, "Progress Rail"). I submit this declaration in support of Progress Rail's Opposition to Defendants' Letter Brief Regarding Motion for Sanctions.

**Case Background**

2. On September 6, 2023, Progress Rail brought this action against Defendants, asserting Clayton Act, Sherman Act, breach of contract, Lanham Act,

1

Delaware Deceptive Trade Practices Act, defamation, and trade libel claims. D.I. 2. On June 12, 2025, the Court dismissed Progress Rail's Clayton Act and Sherman Act claims. D.I. 27. The Court set a February 23, 2026, trial date for the remaining claims. D.I. 28.

3. On August 1, 2025, Progress Rail filed its First Amended Complaint, repleading its Sherman Act and Clayton Act claims along with its other claims that were not previously dismissed. D.I. 51. On September 12, 2025, Defendants moved to dismiss Progress Rail's First Amended Complaint. D.I. 70. On January 30, 2026, the Court denied Defendants' motion to dismiss as to the non-antitrust claims and deferred ruling on the antitrust claims. D.I. 199.

4. While Defendants' motion to dismiss was pending, the parties engaged in discovery on Progress Rail's breach of contract, Lanham Act, Delaware Deceptive Trade Practices Act, defamation, and trade libel claims (Counts IV-IX).

5. Progress Rail's false advertising, deceptive trade practices, defamation, and trade libel claims (collectively, the "libel-related claims") are based on remarks by Defendants' Chief Financial Officer, John Olin, regarding Progress Rail's ongoing viability and competition in the Tier 4 long-haul locomotive market during an industry conference. *See* D.I. 51 ¶¶ 344–51. Namely, Mr. Olin falsely stated that Progress Rail "chose to exit [the Tier 4 locomotive] business," "won't be competing [in the Tier 4 market] going forward," and thus "would not be an option for a

customer." *Id.* ¶ 347. Mr. Olin's remarks were later cited and republished in industry publications consumed by Progress Rail's customers.

6. Progress Rail's breach of contract claims are based on the parties' 2019 Joint Development, Compatibility, Interchangeability and License Agreement and the parties' 2020 WRE Interoperability Electronic Train Management System (I-ETMS) License Agreement. D.I. 51.

7. Progress Rail has sought injunctive relief on its breach of contract and libel-related claims. *Id.*

**Discovery Timeline and Production Scope**

8. The deadline for the substantial completion of document production in this case was October 10, 2025, and fact discovery closed on October 31, 2025. D.I. 35.

9. By the close of fact discovery, Progress Rail produced a total of 12,089 documents (excluding nonresponsive slip sheets)—10,597 documents were produced on or before October 10, 2025, and 1,492 documents were produced between October 11 and October 28. By comparison, Wabtec produced 6,002 documents on or before October 10, and an additional 1,180 documents between October 11 and October 31. Between October 17, 2025, and October 31, 2025, the parties conducted a total of 20 depositions, 8 of which were of Progress Rail employees or former employees. Progress Rail also timely responded to and

supplemented all written discovery, including several sets of interrogatories, requests for production, and requests for admission.

10. As noted by Defendants, the parties agreed that the relevant document production period was "January 1, 2018, to the present, unless otherwise noted." *E.g.*, D.I. 204 at Exhibit D13. I likewise confirmed this time period in an email to Defendants' counsel. *Id.* at Exhibit D16. At that time and at all times subsequent, I, and Progress Rail, intended to abide by this agreement. The fact that later-in-time documents were not timely produced was an unintentional mistake.

11. Defendants had access to the bulk of Progress Rail's document production for several weeks, but did not raise any concerns about the temporal scope of Progress Rail's document production until the final hours of fact discovery. At 7:46 p.m. on Friday, October 31, 2025, the day fact discovery ended, Defendants sent a letter to Progress Rail raising questions about the completeness of Progress Rail's document production, including whether Progress Rail produced documents from 2024 and 2025. Attached hereto as Exhibit 1 is a true and correct copy of Defendants' October 31, 2025, email and letter to Progress Rail.

12. The next day, on Saturday, November 1, 2025, Progress Rail's counsel began investigating the questions raised by Defendants.

13. On or about November 12, 2025, counsel for Progress Rail determined that the materials transferred to its third-party discovery vendor were limited in time

frame due to an inadvertent counsel error, which is discussed in more detail below. The missing documents had been fully preserved and Progress Rail immediately started to review and produce them. Most were produced between December 11 and 22, 2025. A small set that required additional review due to potential privilege were produced on January 6, 2026.

**The Inadvertent Collection Error and Immediate Cure**

14. At different points in time, Progress Rail's IT team took collection snapshots of email accounts being preserved pursuant to a litigation hold. A collection snapshot is a point-in-time capture of a set of data from an email account or system, used to preserve the state of the email account at a specific moment. The snapshots included all materials preserved in each custodian's mailbox as of the date of the snapshot. The legal hold continued in effect after each snapshot was taken, and all post-snapshot materials remained preserved on the legal hold. No data was lost.

15. For each custodian, Progress Rail preserved (1) a snapshot of a documents on a specific date and, separately, (2) an unfiltered set of all materials in the custodian's mailbox after that date. While the snapshot materials were produced before the discovery deadline, the post-snapshot materials were not. This was inadvertent counsel error and was not the result of any deliberate decision or bad faith conduct. *Id*.

16. As a result, the temporal scope of Progress Rail's initial custodial document collection varied by custodian depending on the date of the snapshot, and extended into February 2024 for certain custodians. The snapshot dates for each custodial collection that was exported to the third-party vendor were as follows:

| Custodian | Snapshot Date |
|---|---|
| Sammy Akif | 2/1/2024 |
| Taylor Boggs | 2/9/2024 |
| Vance Batchelor | 2/1/2024 |
| Federick ("Gary") Silcox | 2/3/2024 |
| Paul Denton | 9/27/2023 (date of custodian departure) |
| Evan Sevel | 10/4/2022 (date of custodian departure) |
| Tito Miglio | 6/19/2023 |
| Alan Crecelius | 2/2/2024 |
| Marc Miller | 2/3/2024 |
| John Newman | 6/1/2023 |

17. In my November 14, 2025, letter to Defendants' counsel, I referred to the snapshot dates as "through February 9, 2024." I acknowledge this was imprecise.

6

As illustrated in the chart above, for four custodians from which Progress Rail's initial document productions were made, the snapshot dates and thus emails were from before February 2024.  Two of those snapshots were for former Progress Rail employees who left the company well before February 2024. I recognize now that my imprecise language was an oversimplified explanation.  I corrected my original choice of words in my January 21, 2026, declaration in support of Progress Rail's opposition to Defendants' motion *in limine*.

18.   Upon determining the cause of the gap in the production, Progress Rail expeditiously performed an additional collection of each custodian's mailbox for the period following the snapshot.  Progress Rail transmitted the additional collections to the third-party vendor beginning on November 18, 2025, with transmission being completed on November 19, 2025.

19.   The third-party vendor processed the additional data sets on a rolling basis, with documents being released to a review database after processing.  After application of search terms and date filtration, global deduplication, and email threading, a total of 76,841 documents were released for first-level review.  On November 21, 2025, a team of more than 30 reviewers began first-level review of the documents.

20.   On November 24, 2025, the parties met and conferred. During the meet and confer, I stated that the date cutoff in prior productions was inadvertent and that

we would collect and produce responsive documents. We acted promptly and in good faith to remedy the inadvertent gap in Plaintiffs' document production, and continued to review documents over the Thanksgiving holiday.

21. The first-level review of the 76,841 documents was completed on or around December 3, 2025—an average of nearly 10,000 per business day. A second-level privilege and redaction review was completed on or around December 11, 2025.

22. Plaintiffs made rolling productions on December 11, 2025 and December 22, 2025. Final productions consisting of documents that were downgraded during privilege review occurred on January 8, 2026.

23. Defendants' complain about only limited set of documents from the post October 31 production—an email about Progress Rail's Tier IV locomotives and a handful of emails about Talos disengagements.

**The Late-Produced Email (PRL-00120433)**

24. One document produced in these rolling productions is an email chain at Bates number PRL-00120433, which Defendants cite in their motion for sanctions (D.I. 202) and in the corresponding Declaration of Ms. Van Wagoner (D.I. 204 ¶¶ 20–22). The cited quotations are from a single email ████████████████████████████████████████. As evident from the document itself, ████████████████████████████████████████████████████████████.

8

**The Late-Produced Talos/Disengagement Documents**

25. Other documents produced in the supplemental rolling productions include those cited by Ms. Van Wagoner in her declaration at paragraphs 30–33, all of which relate to causes of certain disengagements. D.I. 204 ¶ 30–33 (citing Exhibits D9–D12). One such cause discussed in these cited documents was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See id.* ¶¶ 32–33 (citing Exhibits D11 and D12). Although the documents that Defendants cite at Exhibits D11 and D12 were not produced until December 2025, Defendants were on notice about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ during the discovery period and in advance of deposing Progress Rail witnesses.

26. For example, in Progress Rail's first supplemental response to Interrogatory 2—served on September 15, 2025, before any depositions were noticed—Progress Rail cites a May 2023 email in which Taylor Boggs discussed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Attached hereto as Exhibit 2 is an excerpted copy of Progress Rail's First Supplemental Objections and Responses to Wabtec's First Set of Interrogatories. That referenced email chain—which was produced to Defendants on October 1, 2025 bearing the Bates number PRL-00013764-70—discusses ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Exhibit 3 at PRL-00013769. Defendants were thus on notice about disengagements caused by

9

a variety of causes and had ample opportunity to ask Progress Rail witnesses about these causes, including ▮▮▮▮▮▮▮▮, during their depositions.

**Progress Rail's Cure Offers**

27. To eliminate any potential prejudice, Progress Rail has agreed not to introduce evidence or argument based on documents produced after October 31, 2025, with only one narrow exception: PTX-0048, which is a reimaged version of a document that was produced before October 31, 2025, and reproduced after October 31, 2025, at Defendants' request. Attached hereto as Exhibit 4 is a true and correct copy of Progress Rail's January 16, 2026 email to Defendants confirming this agreement. As a result, Progress Rail has removed eight of the nine documents on its trial exhibit list that were produced after October 31, 2025, with the exception being PTX-0048. The agreement is not reciprocal—Defendants may use any documents produced after October 31, 2025 at trial. Defendants' Trial Exhibit List includes only 10 documents from the 6,587 documents produced after October 31, 2025.

28. Although Defendants never asked to reopen depositions, Progress Rail offered for Mr. Newman to sit for another deposition before trial that is limited to those documents Defendants intend to use at trial from the post-October 31 document production that include Mr. Newman. Attached hereto as Exhibit 5 is a

10

true and correct copy of Progress Rail's January 21, 2026, email to Defendants regarding Mr. Newman's deposition.

29. Defendants never acknowledged or responded to our offer to make Mr. Newman available for another deposition before trial. Defendants likewise never sought to reopen any other deposition or to extend any deadlines.

**Defendants Took Extensive Discovery on the Relevant Topics**

30. Evidence from the 2024 and 2025 timeframe is critical to Progress Rail's claims. For example, in pretrial exchanges, Defendants have identified ongoing harm and ongoing deceptive practices as issues for the Court to decide. *See* D.I. 197 at Exs. 5 and 14.

31. Between October 17 and October 31, 2025, the parties conducted twenty depositions, in some instances multi-tracking depositions on the same day. During those depositions, Defendants had the opportunity to ask and did ask many questions of Progress Rail's trial witnesses about the 2024 and 2025 timeframe. *See, e.g.*, Exhibit 6, Deposition of John Newman ("Newman Dep. Tr.) at 20:24-22:16, 24:11-25:9, 28:2-30:24, 32:3-33:14, 33:22-37:9, 39:9-40:25, 41:18-42:6, 42:12-43:14, 45:7-47:20, 69:9-72:9, 260:6-261:14, 262:7-263:23; Exhibit 7, Deposition of Tito Miglio ("Miglio Dep. Tr.") at 18:15-19:10, 39:12-40:13, 47:21-48:8, 75:1-13, 100:18-101:1; Exhibit 8, Deposition of Sammy Akif ("Akif Dep. Tr.") at 82:17-23, 147:13-148:4, 232:15-233:2, 233:24-234:7, 234:17-235:6, 235:23-239:2, 242:2-

11

249:14; Exhibit 9, Deposition of Taylor Boggs ("Boggs Dep. Tr.") at 31:16-33:9, 45:10-13, 45:18-24, 140:4-11, 181:3-182:10, 209:5-11, 210:23-212:11, 226:10-227:5, 229:14-24; Exhibit 10, Deposition of Matthew Loomis ("Loomis Dep. Tr.") at 11:9-24, 12:18-13:23, 37:1-38:24, 41:14-42:19, 46:3-47:12, 57:23-60:18, 62:17-65:10, 69:5-11, 70:2-8.

32. Defendants also had the opportunity to ask and did ask many questions during the depositions of Progress Rail's trial witnesses about the reputational harm Progress Rail suffered as a result of Defendants' conduct and the performance, quality, and reliability of Progress Rail products. *See, e.g.*, Exhibit 6 (Newman Dep. Tr.) at 33:22-35:8 (discussing whether ████████ ████████ 49:10-50:18 (discussing whether ████████ ), 54:21-55:4, 59:6-60:13, 72:10-74:11 (discussing the ████████ ████████ 78:6-82:3 (discussing ████ ████████ ), 87:7-91:24 (discussing ████████ ████ ), 92:22-100:21 (discussing ████████ ████████ and allegations in the instant lawsuit), 105:14-106:16 (discussing ████████ ), 112:9-117:20 (same), 120:10-121:2 (same), 220:16-20, 263:24-264:7, 265:1-267:5, 268:16-271:23, 273:1-274:25,

12

277:25-278:13; Exhibit 7 (Miglio Dep. Tr.) at 43:8-44:10, 55:1-56:3 (discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬), 60:6-66:23 (same), 69:1-9 (same), 75:19-76:17 (same), 85:14-89:9 (same), 90:11-95:4 (discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬), 108:21-110:18, 113:22-115:19, 116:16-120:4 (discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ 124:19-125:15 (discussing whether ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ 168:10-169:20; Exhibit 8 (Akif Dep. Tr.) at 194:19-195:4, 239:10-240:6; Exhibit 9 (Boggs Dep. Tr.) at 62:5-63:10, 87:24-89:24 (discussing ▬▬▬▬▬▬▬▬), 142:20-144:7, 209:5-211:3 (discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬), 215:24-224:12 (discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬), 237:13-239:21 (discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬); Exhibit 10 (Loomis Dep. Tr.) at 22:17-23:20, 56:5-57:2.

33. Notwithstanding Defendants' recent suggestion that they would have deposed Mr. Ramm had they possessed the email chain at PRL-00120433 (Exhibit D5 to Ms. Van Wagoner's Declaration), Defendants already possessed approximately 1,430 emails on which Mr. Ramm was in the from/to/cc/bcc for the last in time email. They also previously possessed numerous email chains that discussed Progress Rail's Tier 4 strategy, reliability, and performance, and, in fact, questioned both Messrs. Newman and Miglio about such email chains during their

13

depositions.  *See, e.g.*, Exhibit 6 (Newman Dep. Tr.) at 101:2-106:18; Exhibit 7 (Miglio Dep. Tr.) at 113:1–115:19, 116:2–120:4.  This fact undermines Defendants' purported claim of prejudice.  *See* D.I. 204 ¶ 22.

34. On January 14, 2026, Defendants advised Plaintiffs of their intent to seek exclusion of (1) evidence produced after October 31, 2025, and (2) evidence from 2024 and 2025.  Attached hereto as Exhibit 11 is a true and correct copy of Defendants' January 14, 2026, email to Progress Rail regarding the scope of Defendants' proposed exclusion.

35. Progress Rail has not withheld any nonprivileged, responsive documents and has acted promptly and in good faith throughout this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 10th day of February, 2026

/s/ *Angelo M. Russo*
Angelo M. Russo

Public Version Dated:  February 17, 2026